UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

---

IN RE LORAZEPAM & CLORAZEPATE
ANTITRUST LITIGATION

This document relates to:
HEALTH CARE SERVICE CORPORATION,         MDL No. 1290
      Plaintiff,                                Misc. No. 99-276 (TFH/JMF)

      v.                                        Case No. 01-2646 (TFH/JMF)

MYLAN LABORATORIES, INC., *et al.*,
      Defendants,

      -and-

BLUE CROSS BLUE SHIELD OF
MINNESOTA, *et al.*,
      Plaintiffs,

      v.                                        Case No. 02-1299 (TFH/JMF)

MYLAN LABORATORIES, INC., *et al.*,
      Defendants.

**MEMORANDUM OPINION**

In this memorandum, I resolve the objections the defendants, Mylan Laboratories *et al.* ("Mylan"), make to certain exhibits plaintiffs ("the Blues") have listed in the joint pre-trial statements as exhibits they intend to offer into evidence at the trial of this case.

**Complaints**

According to Mylan, the Blues are attempting to introduce into evidence letters they

received complaining about the increase in the price of the drugs at issue, Lorazepam and Clorazepate. Since the submission of Mylan's written objections, Chief Judge Hogan has concluded that documents evidencing such complaints are inadmissible, thereby accepting Mylan's argument that they are inadmissible hearsay and rendering moot any question of their authenticity.

I note that the Blues seem to think that they will still be able to examine Mylan's witnesses "on their receipt of this large volume of customer complaints and their response to these complaints." Plaintiffs' Joint Memorandum in Opposition to Defendants' Memorandum of Law in Support of Their Hearsay and Authenticity Objections to Documents on Plaintiffs' Exhibit List ("Plains. Mot.") at 3. If they think that such questions and a positive answer by a Mylan employee will then render the complaints admissible, they have misread the Chief Judge's Opinion. He specifically indicated that "[p]laintiffs may examine Mylan's witness on the fact that Mylan received a large volume of consumer complaints following its price increases on this limited issue, but may not delve into the content of those complaints." Memorandum Opinion of April 15, 2005 at n.3. Thus, the Chief Judge has already unequivocally ruled that the complaints are inadmissible and whether they are hearsay or authentic is of no moment whatsoever.

### Presumptions

In my earlier order, I indicated that any document that was submitted by either party in response to a discovery demand or was used by either party during the deposition of a witness was presumed to be authentic and a business record, admissible under Rule 803(6) of the Federal Rules of Evidence. Order of April 5, 2005 at 2.

The Blues read my order to have shifted to Mylan the burden of establishing that such a

document was not authentic or a business record. But, the controlling principle is that if the law creates a presumption, the burden of proof shifts to the opposing party to produce evidence overcoming the presumption. Once that party has done so, the presumption bursts like a bubble, and the party who had the burden of proof in the first place must ordinarily then shoulder the burden of persuasion.[1] Thus, once Mylan comes forward with evidence tending to show that the document was neither authentic nor a business record, the Blues then have the burden, cast upon them by the Federal Rules of Evidence, to establish that the document is authentic and not hearsay.

Moreover, the courts have understandably concluded that, if a party produces a document in response to a discovery demand or subpoena, it cannot then argue that, despite its production,

---

[1] Under the "bursting bubble" theory, a rebuttable presumption vanishes once the party against whom the presumption operates offers evidence to contradict the presumed fact. This theory "is the prevailing view, to which jurists preponderantly have subscribed; it is the view of the Supreme Court, and of this court as well." Legille v. Dann, 544 F.2d 1, 6 (D.C. Cir. 1976) (citations and footnotes omitted). Thus, in the ordinary case, once a party has produced competent evidence to rebut a presumption, the presumption falls away. Id.; Davis v. Altmann, 492 A.2d 884, 886-87 (D.C. 1985). See also Harlem Taxicab Ass'n v. Nemesh, 191 F.2d 459, 461 (D.C. Cir. 1951) ("An association's name and insignia raise a presumption that it owns or controls a cab on which they appear, but this is decisive only in the absence of contrary evidence. . . . When substantial evidence contrary to a presumption is introduced, the underlying facts that originally raised the presumption may or may not retain some degree of probative force as evidence but they no longer have any artificial or technical force; in other words, 'the presumption falls out of the case . . . ' ") (citations omitted); Stone v. Stone, 136 F.2d 761, 763 (D.C. Cir. 1943) ( "In an action which challenges the conduct of a public officer, a presumption of law is indulged in his favor that his official duties were properly performed. Like other such presumptions, it disappears so soon as substantial countervailing evidence is introduced.") (footnote omitted). When a presumption is based on strong social policies, however, courts have ruled that the bubble does not burst, and the party against whom the presumption operates bears not only the burden of production, but also the burden of persuasion. See Green v. District of Columbia Dep't of Employment Servs., 499 A.2d 870, 874 (D.C. 1985).

3

the document is not authentic.[2]  Obviously, courts are not to be trifled with by a party producing, let us say, the plaintiff's personnel folder in response to a demand for its production and then entertaining that party's argument that the folder is not what that party implicitly said it was when it produced the document.  It hardly follows that, because a piece of paper was found in a company's files and produced in discovery, the party who produced it is thereafter disabled from resisting its admission into evidence on the grounds that there is an absence of evidence "sufficient to support a finding that the matter in question is what its proponent claims." Fed. R. Evid. 901(a).  To produce such evidence, there would have to be, for example, testimony that a matter is what it is claimed to be. Fed. R. Evid. 901(b)(1).  While Mylan's production of documents in discovery robs it of any right to claim that the document was not in its files or not responsive to the terms of the production sought, Mylan may still argue that the existence of the document in its files does not itself render the document admissible without some further proof that it is what the Blues claim it to be.  Disabling Mylan from making that argument would mean that any piece of paper found anywhere in the files of a multi-national corporation is *ipso facto* authentic even though, as is true here, there is no evidence of who wrote it, where it came from, or why it was created.  While this may be the point at which the concepts of authenticity and adequate foundation meet, surely evidence cannot be admitted unless, either on its face or because of other proof, it is shown to be what it is claimed to be and is therefore relevant to the issues presented.  If one cannot say with any certainty what the document is, it is impossible to know its essence, and without knowing that, one cannot even ask whether it is what it is claimed

---

[2] See, e.g., United States v. Brown, 688 F.2d 1112, 1116 (7th Cir. 1982) (production of documents in lieu of subpoena implicitly authenticated what was produced); In re Greenwood Air Crash, 924 F. Supp. 1511, 1514 (S.D. Ind. 1995) (same).

to be.

With this fundamental principle in mind, I turn to each of the documents to which Mylan objects on the grounds that the Blues have not established they are authentic.

1.      <u>Number 10694</u>.  This two-page chart of numbers has no internal indication of its meaning and the Blues tender none.  In the absence of such a showing, there is no indication of who created the document or how, when, or why it was created.  As just explained, there is therefore no way of knowing what the document is and no way of establishing that it is what is claimed to be under Rule 901(b)(1).  The objection is sustained.

2.      <u>Number 10719</u>.  Other than a handwritten indication that the document is "From Pace," there is once again no indication of who created the document or how, when, or why it was created.  Without any such indication, there can be no claim of what the document is, let alone proof that the document is what it is claimed to be.  The objection is sustained.

3.      <u>Numbers 11380, 11395, 11559, 11560, 11562, 11563, 11372, 10348, 11582</u>. These documents were prepared by the Blues and will apparently be offered by them at trial with an explanation of how the Blues prepared them.  Pending that explanation, the objection is overruled.

4.      <u>Numbers 10680, 10752, 11032, 11033</u>.  These documents, apparently authored by a man named B. Jerome Jackson, appear to announce some sort of governmental action because they are addressed to "All Regional Administrators" and refer to Medicaid.  As Mylan points out, however, a witness testified under oath that he did not know who "B. Jerome Jackson" was, that he did not recall receiving the documents, and that he was not familiar with them. <u>Defendants' Memorandum of Law in Support of Their Hearsay and Authenticity Objections to Documents on

5

<u>Plaintiffs' Exhibit List That Were Produced by Any Party to This Action or Were Used During a Deposition in This Action</u> ("Defs. Mem.") at 11-12.  There is no testimony proffered by the Blues that the documents were issued by a government agency, and the documents certainly do not fall within the self-authenticating exception in Rule 901(b)(7) because there is a lack of evidence that the document "is from the public office where items of this nature are kept." Fed. R. Evid. 901(b)(7).  I will therefore sustain the objection with the understanding that the Blues should be permitted to establish by testimony, if they can, that the document is what it is claimed to be, *i.e.*, a document issued by a governmental agency.  The Blues also may attempt to establish that the document is from a public office where records of this nature are kept.

## Hearsay

5.     <u>Number 10749</u>.  This document is a summary report of Mylan's interviews of representatives of its customers.  Rule 805 requires that "[h]earsay included within hearsay" is not excluded "if each party of the combined statements conforms with an exception to the hearsay rule provided in these rules." Fed. R. Evid. 805.  The report itself is admissible as either a business record or an admission of a party opponent.  The statements of the interviewees are hearsay and therefore may not be admitted for the truth of the contents.  The objection, subject to the limitation that the statements of the interviewees are not admissible for the truth of their contents, is overruled.

6.     <u>Numbers 11026, 11027, 11028</u>.  Milan Puskar testified that he did not know how these documents came to be in Mylan's possession.  Defs. Mem. at 9.  There is, therefore, no evidence of when, how, or by whom they were created except that one of the documents is on the letterhead of a company called Watson, meaning there is no evidence that they were created in

the ordinary course of business.  The objection to them is sustained.

       7.     <u>Numbers 11380, 11395, 11559, 11560, 11562, 11563, 11372 and 11582</u>.  As noted above, the Blues prepared these documents and thus the hearsay objection is overruled, pending testimony from the Blues' witnesses as to their significance.

       8.     <u>Number 10714</u>.  At the base of this document are four handwritten jokes that the Blues agreed to redact, in a victory for good taste.  The objection will be deemed overruled once the jokes are redacted.

       9.     <u>Number 10747</u>.  The only testimony concerning this spreadsheet is that David Workman (who is not further identified) was not familiar with this document and did not recognize the handwriting that is on it. Defs. Mem. at 13.  In the absence of any evidence whatsoever as to what the document is and how it came into existence, it is impossible to conclude that it was kept in the regular course of business. Fed. R. Evid. 803(6).  The Blues indicate that it may be admissible for a non-hearsay purpose, "showing that Mylan assessed which generic drugs had which competitors when it analyzed which APIs should be the subject of its Exclusive Agreements." Plains. Mem. at 9.  Whether that showing can be made is a function of the foundation the Blues can lay for the admissibility of the document.  I cannot rule on that at this point, but I can conclude that Mylan's objection to the documents being admitted for the truth of their contents must be sustained.

      10.    <u>Number 11165</u>.  These handwritten notes evidence complaints made and under the Chief Judge's ruling, discussed above, are inadmissible.

      11.    <u>Numbers 11172, 1193, 11194, 11195, 11987</u>.  These are newspaper articles, and the Blues admit that they are inadmissible hearsay.  The Blues note that Mylan has listed on its

exhibit list newspaper articles.  I conclude that all newspaper articles tendered by either party are inadmissible if offered to prove the truth of their contents.

      An Order accompanies this Memorandum Opinion.

                                                        _____
                                                        JOHN M. FACCIOLA
                                                        UNITED STATES MAGISTRATE JUDGE

Dated: