## THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| IN RE LORAZEPAM & CLORAZEPATE ANTITRUST LITIG. | ) ) ) | MDL Docket No. 1290 (TFH/JMF) Misc. No. 99-276 (TFH) |
| | ) | **FILED** |
| HEALTH CARE SERV. CORP., Plaintiff, | ) ) ) ) | **OCT 2 4 2012** |
| | ) | Clerk, U.S. District & Bankruptcy Courts for the District of Columbia |
| v. | ) | Civ. No. 01-2646 (TFH) |
| | ) | |
| MYLAN LABS., INC., *et al.*, Defendants. | ) ) ) | |
| | ) | |
| BLUE CROSS BLUE SHIELD OF MINN., BLUE CROSS BLUE SHIELD OF MASS., and FEDERATED MUT. INS. CO. Plaintiffs, | ) ) ) ) ) | |
| | ) | |
| v. | ) | Civ. No. 02-1299 (TFH) |
| | ) | |
| MYLAN LABS., INC., *et al.*, Defendants. | ) ) ) ) | |

## MEMORANDUM OPINION

These proceedings arise from the D.C. Circuit's remand of this action on jurisdictional grounds. On appeal, Defendants challenged, for the first time, the only basis for subject matter jurisdiction over the action – diversity jurisdiction. Defendants were able to demonstrate that at least one plaintiff was not diverse to all of the defendants. Because the pleadings lacked jurisdictional allegations for most of the plaintiffs in this case, the D.C. Circuit remanded the matter for a determination of: (1) the citizenship of plaintiffs for whom the pleadings lacked citizenship allegations and (2) whether – in order to preserve jurisdiction – nondiverse plaintiffs could be dismissed from the action pursuant to Federal Rule of Civil Procedure 21.

This Court has already answered the latter question in the affirmative. See Order, June 1, 2012 [Dkt. No. 1028]. Heretofore unresolved is the citizenship inquiry. Following the remand Plaintiffs submitted jurisdictional allegations for the allegedly diverse plaintiffs whose citizenship had not yet been plead and moved to dismiss nondiverse plaintiffs. After carefully considering Plaintiffs' motion and the oppositions and replies thereto; the oral arguments before the Court; and the entire record of this case, the Court denies Plaintiffs' motion without prejudice.

## I.   Background

The Court assumes familiarity with this case's long and complex factual background and procedural history and so here will dispense with a detailed recounting.[1]   Briefly, however, this action arises from alleged antitrust violations resulting from exclusive licensing agreements among the defendant pharmaceutical drug manufacturers and pharmaceutical drug ingredient manufacturers – Mylan, Inc.; Mylan Pharmaceuticals; Gyma Laboratories of America, Inc.; and Cambrex Corporation.   The named plaintiffs in this action – Blue Cross Blue Shield of Minnesota ("BCBS-MN"), Blue Cross Blue Shield of Massachusetts ("BCBS-MA"), Health Care Service Corporation ("HCSC"), and Federated Mutual Insurance Company ("Federated") – are four health insurance companies.   In addition to bringing suit on their own behalf, the named plaintiffs sued "as claims administrators for their self-funded customers."[2]

Prior to trial, a dispute arose over the propriety of permitting the named plaintiffs to sue on behalf of their self-funded customers.   In an order dated March 2, 2005, this Court concluded

---

[1] For a comprehensive account of this case's extensive procedural history and factual background *see, e.g., In re Lorazepam & Clorazepate Antitrust Litig.* Opinions: 631 F.3d 537 (D.C. Cir. 2011); 295 F. Supp. 2d 30 (D.D.C. 2003); and 467 F. Supp. 2d 74 (D.D.C. 2006).

[2] The term "self-funded customer" refers to entities "providing health benefits directly to their employees using their own funds." *See In re Lorazepam & Clorazepate Antitrust Litig. v. Mylan Labs., Inc.*, 631 F.3d 537.   The named plaintiffs provided "administrative services" for these customers.

the named plaintiffs "lack[ed] authority to bring claims on behalf of their self-funded

customers." Id. However, the Court permitted the name plaintiffs to proceed under Fed. R. Civ.

P. 17(a)(3) by seeking ratification from the self-funded customers to prosecute the claims in their

name. Five of the approximately 1,400 self-funded customers opted out of ratification. The

remaining claims proceeded to trial. Following a jury trial, judgment was entered for Plaintiffs

in the amount of $76,823,943. Defendants appealed.

Days prior to oral argument on Defendants' appeal, Defendants alleged jurisdictional

infirmities. They argued that the Court lacked subject matter jurisdiction because at least one

self-funded customer shared a state of citizenship with a defendant. The Circuit rejected

Plaintiffs' argument that the Court had supplemental jurisdiction over the self-funded customers'

claims. As the real parties of interest to the ratified claims, the Circuit further concluded, the

"self-funded customers must be counted as parties for diversity of citizenship purposes." *In re*

*Lorazepam*, 631 F.3d 537, 540 (D.C. Cir. 2011). Because the pleadings in this matter lacked

citizenship allegations for the self-funded customers, the case was remanded to this Court for an

inquiry into the citizenship of the self-funded customers and a determination of whether any

nondiverse self-funded customers could be dismissed pursuant to Federal Rule of Civil

Procedure 21 ("Rule 21"). *See id.* at 542.

Through an order dated June 1, 2012, this Court concluded nondiverse self-funded

customers could be dismissed under Rule 21 and denied Defendants' motion to dismiss this case

for lack of subject matter jurisdiction.[3] Still pending before the Court is Plaintiffs' Motion to

---

[3] The Court provides its reasoning for that decision below.

Dismiss Claims and for Remittitur [Dkt. No. 1006].[4]  Plaintiffs seek the dismissal of all nondiverse self-funded customers and remittitur of damages attributable to those customers. Defendants argue Plaintiffs' jurisdictional allegations are insufficient to establish diversity jurisdiction over the allegedly diverse self-funded customers.  As detailed below, the Court denies Plaintiffs' motion without prejudice and instructs the parties to engage in further jurisdictional inquiry consistent with the framework outlined in this memorandum opinion.

## II.   Indispensability of self-funded customers

The D.C. Circuit remanded this case, in part, for a determination of whether the nondiverse self-funded customers could be dismissed from the action under Rule 21.  Defendants argue the self-funded customers are "necessary" and "indispensable" parties to this action under Federal Rule of Civil Procedure 19 ("Rule 19") and, therefore, no self-funded customer may be dismissed under Rule 21.  The Court disagrees.

### A.   Legal analysis

Rule 21 provides, inter alia, "[o]n motion or on its own, the court may at any time, on just terms, add or drop a party…" FED. R. CIV. P. 21.  "This Rule allows the district court to dismiss so called 'jurisdictional spoilers' – parties whose presence in the litigation destroys jurisdiction – if those parties are not indispensable and there would be no prejudice to the parties." *In re Lorazepam*, 631 F.3d at 542 (citing *Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 830-32 (1989)).  "[I]t is well settled that Rule 21 invests district courts with authority to allow a dispensable nondiverse party to be dropped at any time, even after judgment has been rendered." *Newman-Green*, 490 U.S. at 832.

---

[4] As amended by Pls.' Supplemental Mot. to Dismiss Claims and for Remittitur [Dkt. No. 1014], Pls.' Reply on their Mot. to Dismiss Claims and for Remittitur [Dkt. No. 1016] and Pls.' Mot. to Dismiss Claims and for Remittitur [Dkt. No. 1030].

However, a court may not dismiss under Rule 21 an otherwise indispensable party under Rule 19. *See In re Lorazepam*, 631 F.3d at 542; *CP Solutions PTE, Ltd. v. GE*, 553 F.3d 156, 159 (2d Cir. 2009) ("Federal Rule of Civil Procedure 21 allows a court to drop a nondiverse party at any time to preserve diversity jurisdiction, provided the nondiverse party is not 'indispensable' under Rule 19(b)"). Before the court determines whether a party is "indispensable" under Rule 19(b), it must first determine under Rule 19(a) whether the party is "necessary" to the action. *See Kickapoo Tribe of Indians v. Babbitt*, 43 F.3d 1491, 1494-95 (D.C. Cir. 1995).[5]

Rule 19(a) reads as follows in applicable parts:

(a) Person Required to Be Joined if Feasible.

> (1) *Required Party.* A person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if:

>> (A) in that person's absence, the court cannot accord complete relief among existing parties; or

>> (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:

>>> (i) as a practical matter impair or impede the person's ability to protect the interest; or

>>> (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

Fed. R. Civ. P. 19(a).

If joinder of a "necessary" party is infeasible, "the court must determine whether, in equity and good conscience, the action should proceed among the existing parties or should be

---

[5] For consistency's sake, the Court will employ the traditional "necessary" and "indispensable" nomenclature notwithstanding the updated Rule 19's departure from the terms. The Advisory Committee Notes acknowledge the departure was "stylistic" rather than "substantive". See FED. R. CIV. P. 19, Notes of Advisory Committee on 2007 Amendments.

dismissed." FED. R. CIV. P. 19(b); *see also Kickapoo*, 43 F.3d at 1494.  Factors to consider

include: (1) "the extent to which a judgment rendered in the person's absence might prejudice

that person or the existing parties;" (2) "the extent to which any prejudice could be lessened by

protective provisions in the judgment, shaping relief, or other means;" (3) "whether a judgment

rendered in the person's absence would be adequate; and" (4) "whether the plaintiff would have

an adequate remedy if the action were dismissed for nonjoinder." FED. R. CIV. P. 19(b); *see also*

*Provident Tradesman Bank & Trust, Co. v. Patterson*, 390 U.S. 102, 109-13 (1968).  "This is a

fact-specific inquiry that 'can only be determined in the context of particular litigation.'" *Primax*

*Recoveries, Inc. v. Lee*, 260 F. Supp. 2d 43, 51 (D.D.C. 2003) (citing and quoting in part

*Provident*, 390 U.S. at 118); *Kickapoo*, 43 F.3d at 1495 ("[t]he rule calls for a pragmatic decision

based on practical considerations in the context of particular litigation").  With these principles

in mind, the Court turns to the parties' arguments.

### B.    Discussion

Before reaching the indispensability analysis under Rule 19(b), the Court seriously

doubts the self-funded customers are necessary parties to the litigation under Rule 19(a).  To

begin with, complete relief can be accorded in the absence of the self-funded customers.  See

FED. R. CIV. P. 19(a)(1)(A).  Each of the plaintiff health insurance companies and the self-funded

customers suffered discrete, particularized, damages to the extent that they paid artificially

inflated prices as a result of exclusive licensing agreements entered into by Defendants.  In the

words of Defendants, "[t]he losses in this case are strictly economic and were calculated by

reference to thousands of specific identifiable pharmaceutical reimbursement transactions."

Defs.' Reply in Support of Defs.' Mot. for Remittitur at 4 [Dkt. No. 905].  Were any or all of the

self-funded customers excluded from this action, the Court would still be in a position to afford complete relief to the remaining parties.

Next, assuming arguendo each self-funded customer has an interest relating to the subject of this action, disposition of the case in their absence neither impedes their ability to protect that interest nor "leave[s] an existing party subject to substantial risk of incurring double, multiple or otherwise inconsistent obligations because of the interest." See FED. R. CIV. P. 19(a)(1)(B).[6] As is noted above, each self-funded customer sustained individually quantifiable damages from Defendants' conduct. Defendants have not established how a final judgment in this action awarding damages for the discrete harms suffered by plaintiffs remaining in this action would "impair or impede" any excluded self-funded customers from protecting their own interests.

Moreover, it is inaccurate for Defendants to argue disposing of this action in the absence of any or all of the self-funded customers would subject Defendants to the risk of incongruous obligations. "'Inconsistent obligations' are not…the same as inconsistent adjudications or results." *Delgado v. Plaza Las Ams.*, 139 F.3d 1, 3 (1st. Cir. 1998) (citations omitted); *see also Cachil Dehe Band of Wintun Indians v. California*, 547 F.3d 962, 976 (9th Cir. 2008). The mere possibility dismissed self-funded customers may choose to sue Defendants for distinct damages they have suffered does not implicate the concerns associated with inconsistent obligations. *See Delgado*, 139 F.3d at 3 ("…inconsistent obligations occur when a party is unable to comply with one court's order without breaching another court's order concerning the same incident…[i]nconsistent adjudications or results, by contrast, occur when a defendant successfully defends a claim in one forum, yet loses on another claim arising from the same

---

[6] Certainly each self-funded customer has an interest in the subject of this action to the extent that they too were harmed as a result of the defendants' conduct. On the other hand, self-funded customers do not have an interest in the discrete damages suffered by the named plaintiffs or any other self-funded customers.

incident in another forum."); see also 4 James Wm. Moore et al., MOORE'S FEDERAL PRACTICE-CIVIL § 19.03[4][d] (3d. ed. 2012) (distinguishing between inconsistent adjudications and inconsistent obligations). Inconsistent adjudications do not implicate the prejudice concerns subsection (a)(b)(ii) endeavors to protect. *See Delgado*, 139 F.3d at 3.

Assuming the self-funded customers are "necessary" parties, they are not indispensable. Joinder of nondiverse self-funded customers is not feasible as their presence would strip this Court of subject matter jurisdiction. *See Provident*, 390 U.S. at 108-109. Considerations of "equity and good conscience" dictate this action proceed to a resolution on the merits in the absence of the nondiverse self-funded customers.

To begin with, no compelling argument has been presented to show that either the dismissed self-funded customers or Defendants would suffer meaningful prejudice were this action to proceed in the absence of any or all of the self-funded customers. The Court has already concluded the exclusion of non-diverse self-funded customers from this action would not "impair or impede" their interest in claims they may have against Defendants. *See Provident*, 390 U.S. at 110 (likening prejudice inquiry under Rule 19(b) to 19(a) inquiry). Defendants, argue the characterization of the self-funded customers as the "real parties of interest" in this case makes them inherently indispensable. This argument misses the point. The self-funded customers are the "real parties of interest" with respect to their own damages claims against Defendants and not with respect to the named plaintiff insurance companies or other self-funded customers' claims. Thus, this is not a case where a party to the action is asking the Court to rule on the rights of an absent party. *See Kickapoo Tribe of Okla. v. Lujan*, 728 F. Supp. 791, 797 (D.D.C. 1990) (dismissing case under Rule 19 because "the real party at interest [was] missing").

Defendants' conduct prior to this remand undermines their present position that equity and good conscience counsel dismissal.  Certainly, Defendants do not here seek to protect excluded self-funded customers from the prejudice of judgment in their absence; indeed, Defendants sought and were granted dismissal of the self-funded customers prior to trial.  See Defs.' Mot. in Limine to Preclude Claims on Behalf of Self-Funded Customers [Dkt. No. 680].[7] Nor have Defendants made a compelling case that they would be prejudiced if this action proceeds in the absence of any or all of the self-funded customers.  Duplicative liability on claims can be avoided by modifying the judgment through remittitur of damages attributable to the dismissed, nondiverse, self-funded customers.  See FED. R. CIV. P. 19(b)(2)(B).  Furthermore, the trial phase of this case has already concluded, thus blunting the specter of prejudice from multiple litigation.  In any case, Defendants did not appear to be genuinely concerned with the prospect of multiple litigation when they sought the dismissal of the self-funded customers from this action prior to trial.  *See Provident*, 390 U.S. at 110 & n.4 ("the defendant may properly wish to avoid multiple litigation or inconsistent relief…[a]fter trial, however, if the defendant has failed to assert this interest, it is quite proper to consider it foreclosed").

Finally, the Court considers efficiency – a particularly forceful consideration at this stage of litigation.  *See Caterpillar Inc. v. Lewis*, 519 U.S. 61, 76 (noting after a final judgment, "considerations of finality, efficiency, and economy become overwhelming").  Efficiency concerns would be different were this litigation in an earlier phase.  However, after over a decade of litigation culminating in a trial and judgment, Plaintiffs have "a strong additional interest in preserving [their] judgment."  *Provident*, 390 U.S. at 110.  Likewise, from the court and public's

---

[7] The Court granted Defendants' motion *in limine*; however, the Court permitted the case to proceed with self-funded customers' claims after ratification under FED. R. CIV. P. 17(a)(3).

perspective, "the fact that time and expense of a trial have already been spent" heavily weigh in favor of proceeding in the absence of nondiverse self-funded customers. *See id.* at 111.

The Court concludes the self-funded customers are not indispensable parties to this action under Rule 19 and, therefore, may be dismissed pursuant to Rule 21. Moreover, the Court rejects Defendants' argument that the contours of Rule 21 itself preclude the dismissal of what ultimately amounts to hundreds of nondiverse self-funded customers. Nothing in Rule 21 supports such a limitation nor do Defendants offer legal precedent in support of the proposition.

## III.  Choice of Law Argument

The Court rejects as fatally belated Defendants' assertions that the Circuit's remand necessitates further choice of law analysis. *See CSX Transp. v. Commercial Union Ins. Co.*, 82 F.3d 478, 482-83 (D.C. Cir. 1996) (noting choice of law argument may be waived). Defendants effectively concede this argument was raised for the first time on appeal. See Defs.' Reply at 10 n.5. They cite *In re Air Crash Disaster at Washington, DC*, 559 F. Supp. 333 (D.D.C. 1983), for the appreciable proposition that a choice of law argument cannot be waived *prior to* the particular court ruling that creates the basis for the argument. *See id.*, 559 F. Supp. at 337. However the basis for any choice of law argument Defendants now wish to pursue existed well before their appeal. The self-funded customers' claims have been a part of this case from its inception. *See In re Lorazepam*, 631 F.3d at 542. This Court's order precluding Plaintiffs from bringing claims "on behalf" of the self-funded customers, Order, March 2, 2005, and subsequent order permitting Plaintiffs to seek ratification from the self-funded customers pursuant to Fed. R. Civ. P. 17(a), Order, April 26, 2005, squarely established the self-funded customers' role as real parties of interest in this case.

Regardless of the parties' perceived basis for the court's jurisdiction over the self-funded customers at trial – whether diversity or supplemental jurisdiction – the choice of law question was firmly implicated well before the appeals proceedings. *See Mastro v. Potomac Elec. Power Co.*, 447 F.3d 843, 857 (D.C. Cir. 2006) (noting choice of law analysis implicated "when [federal court] deciding state-law claims under diversity or supplemental jurisdiction…"). Defendants may not use the Circuit's remand as a chance to advance an argument they could have, but chose not to make.

## IV.   Subject matter jurisdiction

Following the Circuit's remand of this matter, Plaintiffs undertook an investigation into the citizenship – for diversity jurisdiction purposes – of the approximately 1,400 self-funded customers in this case.  At the conclusion of their investigation Plaintiffs requested the dismissal of both nondiverse self-funded customers and those whose citizenship could not be determined. Pls.' Mot. to Dismiss at 22.[8]  In all, Plaintiffs seek the dismissal of nearly 500 self-funded customers.  Defendants argue Plaintiffs have failed to provide sufficient proof to support their jurisdictional allegations.  See Defs.' Cross Mot. to Dismiss at 8-17.

### A.   Legal analysis

"Federal courts are courts of limited jurisdiction.  They possess only that power authorized by Constitution and statute…" *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (citations omitted).  28 U.S.C. § 1332 confers original jurisdiction to district courts over civil actions in which the amount in controversy exceeds $75,000 and diversity of citizenship exits.  See id.  Diversity of citizenship requires no two parties on opposing sides of an

---

[8] Plaintiffs' June 29, 2011 motion to dismiss has been amended through a series of supplemental filings on the jurisdictional issue.  See Pls.' Supplemental Mot. to Dismiss [Dkt. No. 1014]; Pls.' Reply on their Mot. to Dismiss [Dkt. No. 1016]; Pls.' Joint Mot. to Dismiss Claims and for Remittitur [Dkt. No. 1030].

action share states of citizenship. *See Caterpillar Inc.*, 519 U.S. at 68; *Saadeh v. Farouki*, 107 F.3d 52, 55 (D.C. Cir. 1997).

"[T]he party seeking the exercise of diversity jurisdiction bears the burden of pleading the citizenship of each and every party to the action." *Loughlin v. United States*, 393 F.3d 155, 171 (D.C. Cir. 2004) (quoting *Naartex Consulting Corp. v. Watt*, 722 F.2d 779, 792 (D.C. Cir. 1983)). "When challenged on allegations of jurisdictional facts, [the party asserting jurisdiction] must support their allegations by competent proof." *Hertz Corp. v. Friend*, 130 S. Ct. 1181, 1194-1195 (2010) (citing *McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936)); *see also Agudas Chasidie Chabad v. Russian Fed'n*, 528 F.3d 934, 940 (D.C. Cir. 2008).

## B.   Discussion

Here, rather than factually contravening Plaintiffs' jurisdictional allegations or raising an issue of fact, Defendants simply argue Plaintiffs have not met their burden of establishing jurisdiction with competent proof. See Defs.' Mot. to Dismiss at 8.[9]  The Court will not here resolve whether simply uttering "challenge" constitutes a challenge sufficient under *McNutt* to trigger Plaintiffs' burden, but it has its doubts. *See, e.g., Sterk v. Redbox Automated Retail, LLC*, 2012 U.S. Dist. LEXIS 101717, *25-26 (N.D. Ill. July 23, 2012) ("it is only once evidence is offered to rebut jurisdiction that the plaintiff must present evidence to support jurisdiction"); *Branch Banking & Trust Co. v. R&T Rentals*, 2011 U.S. Dist. LEXIS 43910, *4-5 (S.D. Ala. Apr. 4, 2011).  Instead, the Court determines sua sponte Plaintiffs must support their jurisdictional allegations with additional proof. *See Sharp v. Rosa Mexicano, D.C., LLC*, 496 F.

---

[9] In an order dated June 6, 2012, this Court prompted Defendants to assert "any challenges to the factual basis for Plaintiffs' jurisdictional allegations..." See Order, June 6, 2012. Defendants responded with the same arguments raised in their prior briefs on the issue. See Defs.' Resp. to Pls.' Mot. for Remittitur [Dkt. No. 1031]. Of course, the Court is sympathetic to the fact that the procedural oddities in this case which caused defects in the original pleadings may have affected Defendants' incentive to explore self-funded customer citizenship during discovery.

Supp. 2d 93, 97 (D.D.C. 2007) ("[t]he subject matter jurisdiction of the Court is constitutionally limited, and the Court has an obligation under these constitutional limits to address its jurisdiction to hear a case, raising the issue sua sponte if necessary").

The Court's obligation to ensure jurisdiction becomes particularly manifest where, as here, Plaintiffs have altered their jurisdictional allegations no less than three times in a year. For example, Plaintiffs originally moved to dismiss self-funded customers Pilgrim's Pride Corporation and Occidental Petroleum Corporation as nondiverse parties. See Zimmerman Decl., Ex. HC-C. Plaintiffs subsequently alleged those two self-funded customers were in fact diverse. See Pls.' Reply at 30. Then, in a final brief on the issue, Plaintiffs reversed course once again asserting Pilgrim's Pride and Occidental were nondiverse. See Pls.' Mot. to Dismiss Claims and for Remittitur at 6. In other words, Plaintiffs altered the jurisdictional allegations for these particular self-funded customers with almost every subsequent brief on the issue.

The Court appreciates Plaintiffs' good faith efforts to resolve this jurisdictional question. Were the inquiry limited to the facial sufficiency of Plaintiffs' jurisdictional allegations the Court could find no fault. *See Macharia v. United States*, 238 F. Supp. 2d 13, 19 (D.D.C. 2002) (noting that upon a "facial challenge" "a court must accept all of the complaint's well-pleaded allegations as true and draw all reasonable inferences from those allegations in the plaintiffs' favor"). Plaintiffs have adequately alleged the necessary underlying facts to establish. But the concern here is jurisdiction in fact, which requires proof of those alleged facts. The presumption against jurisdiction, *see Kokkonen*, 511 U.S. at 377, combined with the peculiar procedural history of this action and Plaintiffs' equivocal post-remand briefing on this issue dictate the Court approach its subject matter jurisdiction analysis with particular caution.

Ordinarily, analysis of the Court's subject matter jurisdiction would begin with allegations contained in the pleadings.  Here however the pleadings are devoid of jurisdictional allegations for the self-funded customers.  Therefore the Court turns to the parties' post-remand briefs on the issue.  *See District of Columbia ex rel. Am. Combustion v. Transamerica*, 797 F.2d 1041, 1044 (D.C. Cir. 1986) ("[28 U.S.C. §] 1653's liberal amendment rule permits a party who has not proved, or even alleged, that diversity exists to amend his pleadings even as late as appeal").  The self-funded customers for whom Plaintiffs allege diversity jurisdiction fall into one of two general categories: corporate self-funded customers and municipal self-funded customers.  The Court assesses the proof tendered to support the jurisdictional allegations for self-funded customers falling into each of these categories in turn.

### 1.   *Corporate self-funded customers*

For diversity jurisdiction purposes, corporations are citizens of the state or states in which they are incorporated and the state of its principal place of business.  *See Novak v. Capital Mgmt. & Dev. Corp.*, 452 F.3d 902, 906-907 (D.C. Cir. 2006); 28 U.S.C. § 1332(c).  In order to establish the state of incorporation – at the time the original complaint was filed – for corporate self-funded customers, Plaintiffs rely on corporate filings stored online in public records maintained by state Secretaries of State.  See Krein Decl. ¶¶ 3-5, 7-9; Zimmerman Decl. ¶ 8.[10] The Court takes judicial notice of these public records and accepts them as competent proof of the states of incorporation for the relevant self-funded customers.  *See Sears v. Magnolia Plumbing, Inc.*, 778 F. Supp. 2d 80, 84 n.6 (D.D.C. 2011) (taking judicial notice of corporate resolutions filed with the Maryland Department of Assessments and Taxation); *see also Ebersohl v. Bechtel Corp.*, 2010 U.S. Dist. LEXIS 53277, *8-9 (S.D. Ill. May 31, 2010) (taking judicial

---

[10] BCBS-MA and BCBS-MN self-funded customer corporate records identifying the state of incorporation are provided in Krein Supplemental Decl., Ex. 1 and App., respectively.  HCSC self-funded customer corporate records identifying the state of incorporation are provided in Zimmerman Second Supplemental Decl., Ex. 2.

notice of corporate records maintained by Illinois Secretary of State to determine state of incorporation).

The proffer by Plaintiffs to establish the principal place of business for the self-funded customers is another matter altogether. The "principal place of business" is the place where "a corporation's officers direct, control, and coordinate the corporation's activities." *Hertz*, 130 S. Ct. at 1192. To support the alleged principal place of business for most[11] of BCBS-MA's corporate self-funded customers, Plaintiffs rely on corporate annual reports filed with the Massachusetts Secretary of State. See Krein Decl. ¶¶3-4; Suppl. Krein Decl., Ex. 1. The annual reports reflect the self-funded customers': date of incorporation, principal office address, and addresses for the corporation's officers and directors.

The Court finds the records to be insufficient proof of the principal place of business. *See Hertz*, 130 S. Ct. at 1195 ("the mere filing of a form ... listing a corporation's "principal executive offices" would, without more, be insufficient proof to establish a corporation's "nerve center"). Here, Plaintiffs do offer more in the form of a listing of addresses for corporate executives and directors. Nonetheless, the Court cannot find this information sufficiently establishes the principal place of business for BCBS-MA's corporate self-funded customers. The listing of addresses, presumably in some cases home addresses, offers little in the way of support for where the companies' officers *actually* "direct" and "coordinate" corporate activity.

To establish the principal place of business for BCBS-MN, HCSC and some BCBS-MA corporate self-funded customers, Plaintiffs rely on affirmations from the self-funded customers. See Gilde Decl. ¶¶ 4-5; Zimmernan Decl. ¶ 8; Walker Decl. ¶ 3. Each affirmation consists of a boilerplate paragraph which asks "an appropriate individual" to designate:

---

[11] Plaintiffs requested the Court take judicial notice of the principal place of business for certain BCBS-MA self-funded customers. See Pls.' Mot. to Dismiss Claims and for Remittitur at 5. The Court declines their request.

"the principal place of business of the company, that is, the State in which the company's high level officers, directed, controlled and coordinated the corporation's activities".

See, e.g., Zimmerman Decl., Ex. A. The Court cannot accept these affirmations as competent proof of the principal place of business. First, the unsworn affirmations establish no basis of knowledge for the attesters. *See, e.g., Schira v. Sit*, 2010 U.S. Dist. LEXIS 40987, \*4 (W.D. Wis. Apr. 27, 2010) (rejecting affidavit supporting jurisdictional allegations, in part, because affidavit failed to establish affiant had "personal knowledge" of the matter); *Martinez v. Morgan Stanley & Co.*, 2010 U.S. Dist. LEXIS 80797, at \*7-8 (Aug. 9, 2010) ("because …[the] declaration regarding Morgan Stanley & Co. Incorporated's principal place of business lacks foundation, it is insufficient…"). Furthermore, the affirmations offer conclusory allegations which recite the "nerve center" test without providing predicate facts to support those allegations. *See Heck Yea! Quarter Horses, LLC v. Renfrow Supply*, 2012 U.S. Dist. LEXIS 61224, \*11-12 (S.D. Miss. May 2, 2012) (requiring more proof when principal place of business allegation relied on "affidavit stating that the corporation's 'high level officers direct, control and coordinate the corporation's activities from within the State of Florida' and its 'principal place of business is the State of Florida'").

### 2. *Municipal self-funded customers*

Next, a number of the self-funded customers are characterized as "cities, towns, school districts or organizations of these political subdivisions".[12] "[A] political subdivision of a State, unless it is simply 'the arm or alter ego of the State,' is a citizen of the State for diversity purposes." *Moor v. County of Alameda*, 411 U.S. 693, 717 (1973) (citation omitted); *Long v. District of Columbia*, 820 F.2d 409, 413 (D.C. Cir. 1987). "An entity is deemed an arm of the

---

[12] The list of self-funded customers falling into this category includes, among other entities, counties, cities, towns, school districts, correction facilities, library systems, hospitals, sanitary districts,

state whenever the state is the real party in interest." *See Kreiger v. Trane Co.*, 765 F. Supp. 756,

757 (D.D.C. 1991) (citations omitted). Where the state is the real party in interest and the only

basis for subject matter jurisdiction is diversity, the Court lacks subject matter jurisdiction

because states are not subject to diversity jurisdiction. *See Long*, 820 F.2d at 412. Plaintiffs

allege none of the 518 self-funded customers falling into this category are located in states in

which Defendants are citizens. See Pls.' Mot. to Dismiss at 17-18. Defendants contend they

lack the information necessary to assess the relationship between these self-funded customers

and the states in which they are located in order to determine whether a challenge to Plaintiffs'

jurisdictional allegations is warranted. See Defs.' Resp. to Pls.' Mot. for Remittitur at 10-11.

Under the terms set forth below, the Court will permit a brief period of discovery on this

issue alone. *See Diamond Chem. Co. v. Atofina Chems., Inc.*, 268 F. Supp. 2d 1, 15 (D.C. Cir.

2003) (noting Circuit's liberal standard for permitting jurisdictional discovery); *Phoenix

Consulting, Inc. v. Republic of Angola*, 216 F.3d 36, 40 (D.C. Cir. 2000) ("[t]he district court

retains considerable latitude in devising the procedures it will follow to ferret out the facts

pertinent to jurisdiction…" (internal quotations and citation omitted)).

### 3.   *Limited jurisdictional discovery and briefing schedule*

The Court issues the following briefing and discovery schedule pertaining to Plaintiffs'

jurisdictional allegations and Defendants' challenges thereto:

(1)   Defendants shall serve initial jurisdictional discovery requests on Plaintiffs within 30 days of this order permitting jurisdictional discovery. *Discovery requests shall be limited to inquiries on the citizenship, for diversity jurisdiction purposes, of the so called city, town, and school district self-funded customers.*

(2)   This limited jurisdictional discovery shall terminate 75 days from the date of the order permitting jurisdictional discovery.

(3)   Within 7 days of the close of limited jurisdictional discovery, Plaintiffs shall file a motion to amend their pleadings. Plaintiffs' amended complaint shall aver the

jurisdictional facts necessary to establish diversity jurisdiction for self-funded customers over whom they allege this Court has subject matter jurisdiction. *See Loughlin*, 393 F.3d at 148-149; *Transamerica*, 797 F.2d at 1044. Plaintiffs shall also provide competent proof of the principal place of business for the corporate self-funded customers over whom they allege this Court has subject matter jurisdiction.

(4)    Within 7 days of the close of limited jurisdictional discovery, Plaintiffs shall file a motion to dismiss and for remittitur of damages attributable to the dismissed customers dismissing any nondiverse self-funded customers over whom this court lacks subject matter jurisdiction.

(5)    Within 30 days from the date of Plaintiffs' motion to amend their pleadings, Defendants shall file a brief identifying: (i) any challenge, as well as the basis for such challenge, to Plaintiffs' jurisdictional allegations regarding the corporate self-funded customers' principle places of business and (ii) any factual challenge to the Court's subject matter jurisdiction over the so called, city, town, and school district self-funded customers outlining the basis for believing any such self-funded customer is an "arm of the state".

(6)    Plaintiffs shall file a responsive brief within 15 days from the filing of Defendants' brief and Defendants shall file a reply within 14 days of Plaintiffs' response.

## V.    Conclusion

The Court appreciates the fact that this additional phase of litigation may be time consuming and costly. However, it was Plaintiffs who chose to include the self-funded customers in this suit. The vast number of self-funded customers does not exonerate Plaintiffs or this Court from the duty to ensure subject matter jurisdiction appertains. Accordingly, Plaintiffs' motions to dismiss certain self-funded customers and for remittitur [Dkt. Nos. 1006, 1014, 1016 and 1030] shall be **DENIED WITHOUT PREJUDICE**. Plaintiffs are free to renew their motion at the appropriate time, with the appropriate support, pursuant to the briefing schedule delineated above.

An appropriate order accompanies this memorandum opinion.

October 23, 2012

Thomas F. Hogan
UNITED STATES DISTRICT JUDGE