# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| IN RE LORAZEPAM & CLORAZEPATE ANTITRUST LITIG. | MDL Docket No. 1290 (TFH/JMF)<br>Misc. No. 99-276 (TFH) |
| HEALTH CARE SERV. CORP.,<br>    Plaintiff,<br>v.<br>MYLAN LABS., INC., *et al.*,<br>    Defendants. | Civ. No. 01-2646 (TFH) |
| BLUE CROSS BLUE SHIELD OF MINN.,<br>BLUE CROSS BLUE SHIELD OF MASS.,<br>and FEDERATED MUT. INS. CO.<br>    Plaintiffs,<br>v.<br>MYLAN LABS., INC., *et al.*,<br>    Defendants. | Civ. No. 02-1299 (TFH) |

## **MEMORANDUM OPINION**

The D.C. Circuit remanded this matter for a determination as to whether nondiverse plaintiffs could be dismissed under Rule 21 of the Federal Rules of Civil Procedure, and if so, for a determination as to the citizenship of plaintiffs for whom the record lacked jurisdictional allegations. Through its October 24, 2012 Order and accompanying Memorandum Opinion, the Court decided that the nondiverse plaintiffs in this action are dismissible under Rule 21 and addressed evidentiary issues related to citizenship. *See In re Lorazepam*, 900 F. Supp. 2d 8 (D.D.C. 2012). Presently pending before the Court are (1) Plaintiffs' Joint Motion for Leave to File Amended Complaints ("Pls. Mot. for Leave") [ECF. No. 1049], and (2) Plaintiffs' Joint Motion to Dismiss Claims and for

Order for Remittitur ("Pls. Mot. to Dismiss and for Remittitur") [ECF No. 1051]. For the reasons that follow, together with the reasons set forth in the Court's October 24, 2012 Memorandum Opinion, the Court grants Plaintiffs' Joint Motion for Leave to File Amended Complaints and grants Plaintiffs' Joint Motion to Dismiss Claims. The Court will not address Plaintiffs' Motion for Remittitur at this time.

## I. Background

The Court assumes familiarity with the long and complex factual background and procedural history of this case, and so here will dispense with a detailed recounting.[1] In the instant motion, Plaintiffs contend that they have averred the factual predicates necessary for this court's exercise of subject matter jurisdiction over 612 of the 1387 corporate and municipal self-funded customers included in the proposed damages award presented by plaintiffs' damages expert, Dr. Saha, and adopted by the jury at trial.[2] *See* Pls. Mot. for Leave 5. As a corollary, plaintiffs seek dismissal and remittitur for the claims of 775 self-funded customers who are either non-diverse from defendants or for whom plaintiffs cannot establish citizenship. Pls.' Mot. To Dismiss and for Remittitur at 4.

---

[1] For an account of this case's extensive procedural history and factual background *see, e.g., In re Lorazepam & Clorazepate Antitrust Litig*. Opinions: 631 F.3d 537 (D.C. Cir. 2011); 900 F. Supp. 2d 8 (D.D.C. 2012); 295 F. Supp. 2d 30 (D.D.C. 2003); and 467 F. Supp. 2d 74 (D.D.C. 2006).

[2] Plaintiffs assert that this Court has jurisdiction over: 419 of BCBS-MN's self-funded customers (70 corporate and 349 municipal/political subdivision), *See* Pls. Mot. for Leave Ex. A1; 153 of BCBS-MA's self-funded customers (58 corporate and 95 municipal/political subdivision), *See id.* at Ex. A2, and 40 of HCSC's self-funded customer (2 corporate and 38 municipal/political subdivision) *id*. at Ex. B1.

Defendants, through their responsive brief, raise challenges to plaintiffs' jurisdictional allegations with respect to certain entities plaintiffs have not voluntarily dismissed from the case. *See* Defendants' Response to Plaintiffs' Motions for Leave to File an Amended Complaint, to Dismiss Claims, and for an Order for Remittitur 8-14 ("Defs.' Resp.") [ECF. No. 1052].[3] In addition to raising factual challenges, defendants raise challenges based on plaintiffs' inconsistent jurisdictional allegations and alleged failure to comply with the discovery order issued by this Court in its October 24, 2012 Memorandum Opinion. *See In re Lorazepam*, 900 F. Supp. 2d 8, 20 (D.D.C. 2012). Thus, in analyzing defendants' challenges, the Court divides them into two categories: (1) factual challenges to jurisdiction and (2) challenges based on plaintiffs' alleged failure to consistently plead and prove citizenship or to comply with the discovery order. For the reasons that follow, the Court finds that plaintiffs have met their burden to establish diversity jurisdiction over all of the self-funded customers in dispute.

## II. Legal Standards

Rule 15 of the Federal Rules of Civil Procedure provides that a party "may move—at any time, even after judgment—to amend the pleadings." Fed. R. Civ. P. 15(b). "Whether to grant leave to amend a pleading is a matter left to the district court's sound discretion." *Abdullah v. Washington*, 530 F. Supp. 2d 112, 114 (D.D.C. 2008) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)). "While

---

[3] Defendants, in their responsive brief, also request that the Court dismiss the case in its entirety or dismiss all of the self-funded customers from the case. The Court has already denied defendants' motion to dismiss for lack of subject matter jurisdiction, *see In re Lorazepam*, 900 F. Supp. 2d 8 (D.D.C. 2012), so does not address those requests in this opinion.

the Supreme Court has instructed that leave to amend should be 'freely given,' it has also provided examples of when leave may be denied, 'including undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party, and futility of amendment.'" *Lewis-Burke Associates, LLC v. Widder*, 725 F. Supp. 2d 187, 195 (D.D.C. 2010). "[A] district court may properly deny a motion to amend if the amended pleading would not survive a motion to dismiss." *In re Interbank Funding Corp. Sec. Litig.*, 629 F.3d 213, 218 (D.C. Cir. 2010).

The Court construes defendants' response challenging the diversity of specific plaintiffs as a motion to dismiss for lack of subject matter jurisdiction. Because defendants challenge the underlying facts contained in the complaint, *Keli v. Rice*, 571 F. Supp. 2d 127, 130 (D.D.C. 2008), "the plaintiff bears the burden of establishing the factual predicates of jurisdiction by a preponderance of the evidence." *Keli*, 571 F. Supp. 2d at 131 (quoting *Al-Owhali v. Ashcroft*, 279 F. Supp. 2d 13, 20 (D.D.C. 2003) (internal quotations marks omitted)). When resolving a factual challenge the court may turn to evidence outside of the pleadings to determine whether it has subject matter jurisdiction over the challenged claim. *Id.* (citing *Jerome Stevens Pharm., Inc. v. FDA*, 402 F.3d 1249, 1253 (D.C. Cir. 2005)). "The district court retains 'considerable latitude in devising the procedures it will follow to ferret out the facts pertinent to jurisdiction,' but it must give the plaintiff 'ample opportunity to secure and present evidence relevant to the existence of jurisdiction.'" *Phoenix Consulting Inc. v. Republic of Angola*, 216 F.3d 36, 40 (D.C. Cir. 2000) (quoting *Prakash v. American University*, 727 F.2d 1174, 1179-80 (D.C. Cir. 1984)).

### III. Plaintiffs Have Established a Sufficient Factual Predicate for this Court's Exercise of Subject Matter Jurisdiction

#### A. Factual Challenges

**<u>Diocese of Duluth</u>**

Defendants argue that because Diocese of Duluth is listed as a "general entity" with the Minnesota Secretary of State's website, plaintiffs must establish its citizenship under the rules for unincorporated associations. Defs.' Resp. 13. BCBS-MN alleges that the Diocese of Duluth was a diocesan corporation at the time the complaint was filed, BCBS Am. Compl. Ex. A1 ¶ 20, and thus is treated as a corporation for diversity purposes. *See* Plaintiffs' Responsive Brief to Defendants' Challenges to Plaintiffs' Jurisdictional Allegations 10-11 ("Pls.' Responsive Brief") [ECF No. 1055]. Plaintiffs argue that federal courts universally treat non-business corporations as corporations for diversity purposes. *Id.* Defendants, in response, argue that the Diocese of Duluth is a "general entity," and plaintiffs have failed to establish that a "general entity" is a "non-business corporation." *See* Reply Memorandum in Further Support of Defendants' Jurisdictional Objections 6 ("Defs.' Reply") [ECF No. 1056].

Plaintiffs have submitted a sworn declaration stating that the Diocese of Duluth was a diocesan corporation incorporated in Minnesota under Minnesota state statute 315.16. Pls.' Mot. for Leave Ex. 1, at 66 ¶ 2 [ECF. No. 1049-6]. Section 16 of Chapter 315 of the Minnesota Statutes provides that the bishop of a diocese, the vicar general, and the chancellor of the diocese may join with two other members of the denomination to adopt, sign, and acknowledge a certificate of incorporation to be filed in accordance with section 315.15. *See* Minn. Stat. § 315.16 (2014). Section 315.15 provides that "[w]hen they have recorded the certificate with the county recorder of the

- 5 -

county where the corporation is located, they and their successors become a corporation, subject to the requirement, and with the rights, powers, and privileges of a religious corporation." Minn. Stat. § 315.15. Thus, diocesan corporations are corporations incorporated under Minnesota law. The fact that the Diocese of Duluth is listed as a "general entity" with the Minnesota Secretary of State's website does not establish, or even suggest, that it is an unincorporated association. Defendants fail to explain the significance of this categorization under the Minnesota Secretary of State's organizational scheme.

Thus, plaintiffs have established that the Diocese of Duluth is a corporation incorporated under Minnesota law for purposes of diversity jurisdiction. Having alleged that its state of incorporation and principal place of business are in Minnesota, a state that is diverse to all of the defendants, plaintiffs have established by a preponderance of the evidence that the Diocese of Duluth is a diverse party subject to this Court's jurisdiction.

**Great River Energy**

In a similar type of argument as defendants' challenge to the Diocese of Duluth, defendants argue that because Great River Energy is listed as a "Cooperative (Domestic)" with the Minnesota Secretary of State's website, plaintiffs must establish the citizenship of Great River Energy's members under the rules for unincorporated associations. Defs.' Resp. 13. Plaintiffs argue that they have provided evidence that Great River Energy is a cooperative corporation under Minnesota law in a declaration in support of principal place of business. Pls.' Responsive Brief 14. Furthermore, plaintiffs argue, under Minn. Stat. § 308A.201, cooperative corporations are full corporations. *Id.* Defendants counter that the Minnesota statute does not provide that cooperative corporations are corporations under Minnesota law, and furthermore, that plaintiffs have failed to establish that a

domestic cooperative is jurisdictionally equivalent to corporations for diversity purposes, the presumption being to the contrary under *Carden v. Arkoma Associates.*, 494 U.S. 185, 195-96. *Id.*

As plaintiffs note, a Minnesota federal court has found that cooperative corporation is treated as a corporation for purposes of diversity jurisdiction. *Zosel v. Minn-Dak Farmers' Co-Op., Inc.*, 463 F. Supp. 2d 960, 961 n.2. (D. Minn. 2006). Defendants have not cited any contrary authority. In addition, plaintiffs have submitted a sworn declaration that states that Great River Energy is incorporated under state law. *See* Pls. Mot. for Leave Ex. 1, at 101-03. Thus, plaintiffs have shown by a preponderance of the evidence that Great River Energy is a corporation under Minnesota law for the purpose of diversity jurisdiction.

**Massachusetts Bay Transportation Authority ("MBTA")**

Defendants argue that the Massachusetts Bay Transportation Authority ("MBTA"). one of BCBS-MA's self-funded customers, should be considered an "arm of the state" (and thus not a citizen of any state for diversity purposes) because all of the directors are appointed by the governor. Defs.' Resp. at 9. BCBS-MA alleges that the MBTA was a Massachusetts political subdivision located in Massachusetts and organized under Mass. Gen. Laws, ch. 161A at the time the original complaint was filed. *Id.* Plaintiffs contend that the MBTA is not an "arm" of the Commonwealth of Massachusetts, and thus is a citizen of Massachusetts. *See* Pls.' Responsive Brief 17.

Plaintiffs point out that the MBTA has been a party to cases in federal court based on diversity jurisdiction. *See, e.g, Cournoyer v. Massachusetts Bay Transp. Authority*, 744 F.2d 208, 209 (1st Cir. 1984); *CSX Transportation, Inc. v. Massachusetts Bay Transp. Authority.*, 697 F. Supp. 2d 213, 216 (D. Mass. 2010). Defendants do not cite any contrary authority, nor do they give this Court any reason to believe that these courts were incorrect. Thus, plaintiffs have shown by a

preponderance of the evidence that the MBTA is a political subdivision of Massachusetts that is not an "arm or alter ego" of the state for purposes of diversity jurisdiction. Because the MBTA is a citizen of a state that is diverse to all of the defendants, plaintiffs have established by a preponderance of the evidence that the MBTA is subject to this Court's jurisdiction.

### Tighe & Bond, Inc.

BCBS-MA alleges that Tighe & Bond, Inc. was a Massachusetts corporation incorporated in the State of Massachusetts with its principal place of business in Westfield, Massachusetts when the original complaint was filed. BCBS Am. Comp. Ex. A2 ¶ 53. The declaration in support of Tighe & Bond's principal place of business states the same. Pls.' Joint Mot. for Leave Ex. 2 at 180-82. The declaration also provides that "[i]n 2002, Tighe & Bond was registered as a corporation in New York and New Jersey, but did a very small percentage of its business in those states, and no executive-level corporate activity took place in those states." *Id.* at 182 ¶ 3.

Defendants argue that because the declarant failed to define what he meant by "registered as a corporation," plaintiffs have failed to eliminate the possibility that Tighe & Bond is nondiverse, as defendants are citizens of New York and New Jersey. Defs.' Resp. 12. Plaintiffs counter that defendants' argument "incorrectly conflates the legal concept of incorporation and corporate registration" and that "[w]here a corporation has registered in order to conduct business has no bearing on its citizenship[.]" Pls.' Responsive Brief 8-9. Plaintiffs also point out that this Court has taken judicial notice of the fact that Tighe & Bond is incorporated in Massachusetts. *Id.* Furthermore, plaintiffs argue, the declaration in support of Tighe & Bond's principal place of business expressly states that Tighe & Bond was incorporated in Massachusetts. *Id.* at 8. Defendants respond that

- 8 -

"[p]laintiffs incorrectly assume that Defendants were only concerned with Tighe & Bond's place of incorporation, but without explanation there is also no way to be confident that Tighe & Bond's principal place of business was not in New York or New Jersey." Defs.' Reply 5.

Although defendants challenge the proof tendered in support of principal place of business rather than the allegations made on the face of the complaint, defendants do not challenge the factual predicate in any meaningful way, for example by proffering facts to suggest that the entity was actually a citizen of New York or New Jersey. *See McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936) (party asserting jurisdiction must support allegations with competent proof if allegations "are challenged by his adversary in any appropriate manner.") Plaintiffs have already provided competent proof that Tighe & Bond's principal place of business was in Westfield, Massachusetts, not New York or New Jersey. Plaintiffs submit a sworn declaration by David Croney, who was employed by Tighe & Bond as a Controller when the original complaint was filed. Pls.' Joint Mot. for Leave Ex. 2, 180 ¶ 1. The declaration provides predicate facts to support the allegation of principal place of business. The "principal place of business" refers to the "place where a corporations's officers direct, control, and coordinate the corporation's activities. *Hertz Corp. v. Friend*, 559 U.S. 77, 93 (U.S. 2010). In applying the "nerve center" test elucidated in *Hertz*, the Fourth Circuit looked to the location where the corporate officers control policies and high-level decisions. *See, e.g.*, *Cent. W. Va. Energy Co. v. Mt. State Carbon, LLC*, 636 F.3d 101 (4th Cir. 2011) (finding that corporation's principal place of business was where seven of eight high level officers set policies and oversaw significant corporate decisions). The declaration by David Croney states that

> all executive-level operational and administrative departments and/or functions were based at and/or performed from the company's corporate headquarters in Westfield, Massachusetts including: day to day managerial functions; creation and approval of

> corporate policies; budgeting, accounting and related financial functions and decisions; strategic planning; human resources, including key employment decisions and payroll; marketing and sales, and banking.

Pls.' Joint Mot. for Leave Ex. 2, 181 ¶ 4. The sworn declaration, the veracity of which defendants do not challenge, establishes by a preponderance of the evidence that Tighe & Bond is a citizen of Massachusetts.

### B. Challenges Based on Inconsistent Allegations & Alleged Failure to Comply with the Discovery Order

**Pierce County, WI**

In their amended complaint, Plaintiffs erroneously alleged that Pierce County is a county located in Minnesota, BCBS Am. Comp. Ex. Al ¶ 161, when it in fact is a county located in Wisconsin. Plaintiffs, in their responsive brief, concede that Pierce County is indeed a county located in Wisconsin and file a revised amended complaint correcting the error. *See* Pls.' Responsive Brief 3-4. Defendants request that this Court disallow plaintiffs "belated claim to represent Pierce County, WI because it contradicts their prior discovery representations and comes almost two months after the date when Plaintiffs were ordered to bring forward their final jurisdictional evidence and averments." Defs.' Reply 8-9.

As a citizen of either Minnesota or Wisconsin, Pierce County is diverse from defendants. Defendants do not argue that Pierce County is nondiverse, but merely argue that this Court should prohibit plaintiffs from correcting their error. However, as long as the Court gives plaintiffs "ample opportunity to secure and present evidence relevant to the existence of jurisdiction," the Court "retains 'considerable latitude in devising the procedures it will follow to ferret out the facts pertinent to jurisdiction.'" *Phoenix Consulting Inc. v. Republic of Angola*, 216 F.3d 36, 40 (D.C. Cir. 2000)

(quoting *Prakash v. American University*, 727 F.2d 1174, 1179-80 (D.C. Cir. 1984)). Because plaintiffs allege adequate facts to establish that Pierce County, Wisconsin is diverse from defendants in their Revised Amended Complaint, there is no basis for dismissing Pierce County as a nondiverse self-funded customer.

### **Texas School Districts**

Defendants contend that all of the Texas School Districts should be dismissed because plaintiffs failed to confirm, pursuant to the method of proof the parties agreed to follow in the Discovery Order, that the schools were organized under the appropriate statute by the termination of jurisdictional discovery. Defs.' Resp. 10-11. However, the type of documents defendants demand do not exist for the Texas schools. The parties agreed that plaintiffs would produce the charter or other organizing document establishing and governing each municipal/political subdivision self-funded customer in exchange for defendants' deferral of all discovery requests related to those customers. *See* Defs.' Resp. Ex. B, at 3 [ECF. No. 1053-2]. On December 21, 2012, HCSC sent defendants charters, organizing documents, and other materials related to HCSC's self-funded customers. *See* Defs.' Resp. Ex. D [ECF No. 1053-4]. In correspondence between the parties, HCSC explained that three of the four categories of self-funded customers (including the school districts) were organized under Texas law, and submitted copies of the acts, constitutional provisions, or sections of the Texas Code in lieu of organizing charters. *See id.* The Court finds that HCSC did not violate the discovery order by providing defendants with the relevant statutory code in lieu of charters that do not exist.

**Beth Israel Deaconess Medical Center (BIDMIC), Great River Energy, Diocese of Duluth, Minnesota Annual Conference of the United Methodist Church (MACUMC), and BCBSM Inc.**

Defendants argue that the Beth Israel Deaconess Medical Center (BIDMIC), Great River Energy, Diocese of Duluth, Minnesota Annual Conference of the United Methodist Church (MACUMC), and BCBSM Inc. should be dismissed due to inconsistency between plaintiffs' jurisdictional allegations, proof, and representations in submissions before and after this Court's October 24, 2012 Order. Defs.' Resp.12-14. However, defendants were instructed to submit a responsive brief outlining their challenges within 30 days of Plaintiffs' Motion to File Amended Complaints. *See In re Lorazepam*, 900 F. Supp. 2d 8, 20 (D.D.C. 2012). Thus, Plaintiffs' Joint Motion to Dismiss Claims and for Remittitur, which set forth the jurisdictional allegations defendants now rely on in raising these challenges, was dismissed without prejudice. Plaintiffs were instructed to aver jurisdictional facts sufficient for this Court's exercise of subject matter jurisdiction in the proposed amended complaint now before the Court. Therefore, defendants were not expected to rely on plaintiffs' prior representations in raising challenges, and plaintiffs were permitted to alter the allegations previously made.

### IV. Conclusion

The Court has already concluded that self-funded customers are not indispensable parties under Rule 19 of the Federal Rules of Civil Procedure, and thus may be dismissed pursuant to Rule 21. *In re Lorazepam*, 900 F. Supp. 2d 8, 14 (D.D.C. 2012). In light of this holding, and because the Court finds that plaintiffs have met their burden to establish diversity jurisdiction for the self-funded customers referenced in their amended complaints, the Court GRANTS Plaintiffs' Joint Motion for

Leave to File Amended Complaints [ECF No. 1049][4] and GRANTS Plaintiffs' Joint Motion to Dismiss Claims [ECF No. 1051], thereby dismissing without prejudice the self-funded customers listed in Exhibits 1-3 to the January 14, 2013 Declaration of Justin Mclean [ECF No. 1051-4]. The Court will rule on Plaintiffs' Motion for Remittitur in a separate order.

An appropriate order accompanies this memorandum opinion.

July 29, 2014

                                        */s/ Thomas F. Hogan*
                                        Thomas F. Hogan
                                  Senior United States District Judge

---

[4] As amended by the BCBS Revised Fourth Amended Complaint.