## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| IN RE LORAZEPAM & CLORAZEPATE ANTITRUST LITIG. ) ) ) | MDL Docket No. 1290 (TFH/JMF) Misc. No. 99-276 (TFH) |
| ─────────────────────────── ) ) | |
| HEALTH CARE SERV. CORP., Plaintiff, ) ) ) ) | |
| v. ) | Civil Action No. 01-2646 (TFH) |
| MYLAN LABS., INC., *et al.*, Defendants. ) ) ) ) | |
| ─────────────────────────── ) | |
| BLUE CROSS BLUE SHIELD OF MINN., BLUE CROSS BLUE SHIELD OF MASS., and FEDERATED MUT. INS. CO. Plaintiffs, ) ) ) ) ) ) | |
| v. ) ) | Civil Action No. 02-1299 (TFH) |
| MYLAN LABS., INC., *et al.*, Defendants. ) ) ) ) | |
| ─────────────────────────── ) | |

### MEMORANDUM OPINION

Following remand from the D.C. Circuit on jurisdictional grounds, the Court determined that nondiverse plaintiffs could be dismissed from this action pursuant to Rule 21 of the Federal Rules of Civil Procedure. *See In re Lorazepam & Clorazepate Antitrust Litig.*, 900 F. Supp. 2d 8 (D.D.C. 2012). As a result, the plaintiffs have dismissed the claims of 775 self-funded customers who are either nondiverse from the defendants or whose citizenship could not be determined. *See In re Lorazepam & Clorazepate Antitrust Litig.*, 62 F. Supp. 3d 38 (D.D.C. 2014). The plaintiffs have met their burden to establish diversity jurisdiction over all of the remaining self-funded customers, *see id.*, and the only issue that remains to be decided is whether the Court must conduct a partial retrial on

damages or whether it can enter a remittitur for the portion of the damages attributable to the dismissed parties. After careful consideration, and for the reasons detailed below, the Court concludes that remittitur is appropriate so Plaintiffs' Joint Motion for Remittitur [ECF No. 1051][1] shall be granted.

## I. Background[2]

This action arose from alleged antitrust violations resulting from exclusive licensing agreements among the defendant pharmaceutical drug manufacturers and pharmaceutical drug ingredient manufacturers. *See* Third Am. Compl. [ECF No. 1066]; Fourth Am. Compl. [ECF No. 1050]. The named plaintiffs – Blue Cross Blue Shield of Minnesota ("BCBS-MN"), Blue Cross Blue Shield of Massachusetts ("BCBS-MA"), Health Care Service Corporation ("HCSC"), and Federated Mutual Insurance Company ("Federated") – are four health insurance companies that sued on behalf of themselves and as claims administrators for their self-funded customers. *See* Third Am. Compl. 2; Fourth Am. Compl. 2.

Shortly before trial, the defendants challenged the plaintiffs' authority to sue on behalf of their self-funded customers. *See* Defs.' Mot. in Limine to Preclude Evidence of Pls.' Claims on Behalf of

---

[1]    The plaintiffs' motion was initially filed as "Plaintiffs' Joint Motion to Dismiss Claims and for Remittitur." By order dated July 29, 2014, the Court granted Plaintiffs' Joint Motion to Dismiss Claims and deferred ruling on the plaintiffs' request for a remittitur. *See In re Lorazepam & Clorazepate Antitrust Litig.*, 62 F. Supp. 3d 38 (D.D.C. 2014). The issues currently before the Court do not involve plaintiff Federated Mutual Insurance Company because it does not have any self-funded customers. *See* ECF No. 1006 at 2 n.1.

[2]    For an account of the complex procedural history and factual background of this case, *see, e.g., In re Lorazepam & Clorazepate Antitrust Litigation* opinions: 631 F.3d 537 (D.C. Cir. 2011); 900 F. Supp. 2d 8 (D.D.C. 2012); 467 F. Supp. 2d 74 (D.D.C. 2006); and 295 F. Supp. 2d 30 (D.D.C. 2003).

Their Self-Funded Customers [ECF No. 680]. The Court found that the insurance companies were not the real parties in interest with respect to the claims for damages suffered by their self-funded customers, *see* Order (Mar. 7, 2005) [ECF No. 745], but it allowed the plaintiffs to seek ratification from their self-funded customers pursuant to Rule 17 of the Federal Rules of Civil Procedure, *see* Order (Apr. 25, 2005) [ECF No. 821]. Five self-funded customers opted out during the ratification process. *See* Defs.' Mot. for Remittitur Under Rule 59(e) and Mem. in Support Thereof Ex. B, Gilde Decl. ¶ 3 [ECF No. 890-3] and Ex. C, Skwara Decl. ¶ 3 [ECF No. 890-4].

The remaining claims proceeded to trial. On June 1, 2005, the jury found in favor of all plaintiffs and against all defendants and awarded each plaintiff the precise amount of damages calculated by Dr. Atanu Saha, the plaintiffs' economic antitrust expert. *See* Verdict Form 4 [ECF No. 875]; *see also* Trial Tr. 14:9-16, 40:18-41:10 May 12, 2005 (PM); PEX 5002 ("Annual Summary of Damages by Plaintiff"). The Clerk entered Judgments on the Verdict against the defendants in favor of plaintiffs Blue Cross Blue Shield ("BCBS") of Massachusetts [ECF No. 877], BCBS of Minnesota [ECF No. 878], Health Care Service Corporation ("HCSC") [ECF No. 879], and Federal Mutual Insurance Company [ECF No. 880].

Following the resolution of extensive post-trial motions, on January 24, 2008, the Court granted the plaintiffs' motions for treble damages and granted in part the defendant's motion for remittitur under Rule 59(e). *In re Lorazepam & Clorazepate Antitrust Litig.*, 531 F. Supp. 2d 82 (D.D.C. 2008). The Clerk entered an updated Judgment in a Civil Case [ECF No. 947] to reflect the amended damages awards, and the defendants appealed, *see* Notices of Appeal [ECF Nos. 956, 957]. On July 16, 2009, the Court adopted Magistrate Judge Kay's Report and Recommendation granting BCBS-MA, BCBS-MN, and Federated's Motion to Amend the Judgment to Include Prejudgment

- 3 -

Interest, *see* Order (July 16, 2009) [ECF No. 999], so the defendants filed Amended Notices of Appeal on July 31, 2009, *see* Amended Notice of Appeal [ECF Nos. 1000, 1001].

Just days prior to oral argument before the D.C. Circuit, the defendants filed a motion to dismiss for lack of subject matter jurisdiction, asserting that at least one self-funded customer shared a state of citizenship with at least one defendant. *See* Motion to Dismiss, *In re Lorazepam*, No. 08-5044 (D.C. Cir. Oct. 3, 2010). The Circuit rejected the plaintiffs' argument that the Court had supplemental jurisdiction over the self-funded customers' claims and held that the "self-funded customers must be counted as parties for diversity of citizenship purposes." *In re Lorazepam*, 631 F.3d 537, 540 (D.C. Cir. 2011). Because the pleadings lacked citizenship allegations for the self-funded customers, the Circuit remanded the case for an inquiry into the citizenship of the self-funded customers and a determination of whether any self-funded customers could be dismissed under Federal Rule of Civil Procedure 21. *Id.* at 542. The Circuit noted that "[s]ince this may also affect damages, the district court *may* have to conduct a partial retrial on that issue." *Id.* (emphasis added).

On remand, the Court held that nondiverse self-funded customers could be dismissed under Rule 21 of the Federal Rules of Civil Procedure and denied the defendants' motion to dismiss for lack of subject matter jurisdiction. *In re Lorazepam & Clorazepate Antitrust Litig.*, 900 F. Supp. 2d 8 (D.D.C. 2012). The plaintiffs have now dismissed over half of the self-funded customers from the lawsuit – 775 out of 1,387 – because they are either nondiverse from one defendant or their citizenship cannot be determined. *See In re Lorazepam,* 62 F. Supp. 3d 38 (D.D.C. 2014); *see also* Third Am. Compl. [ECF No. 1066]; Fourth Am. Compl. [ECF No. 1050]. Because the jury's verdict included damages awarded to these dismissed self-funded customers, the Court must now decide whether a partial retrial on damages is required or whether it is appropriate to enter a remittitur.

## II.  Legal Standard

In general, remittitur is a practice by which a trial court can require a party to choose between reduction of an excessive damages award and a new trial. When a court determines that a verdict is excessive because it is more than a reasonable jury could have awarded based on the evidence presented at trial, the court must give the parties the option of a new trial in order to avoid impinging on their Seventh Amendment rights. *See, e.g., Langevine v. District of Columbia*, 106 F.3d 1018, 1024 (D.C. Cir. 1997) (explaining that because "the Seventh Amendment right to a jury pervades the realm of jury verdict decisions . . . [a] court must be especially hesitant to disturb a jury's determination of damages in cases involving intangible or non-economic injuries."). But when "it is apparent as a matter of law that certain identifiable sums were included in the verdict that should not have been there," it is appropriate for a district court to enter a remittitur and correct the verdict without further jury proceedings. *See Carter v. District of Columbia*, 795 F.2d 116, 134 (D.C. Cir. 1986) (quoting 11 Charles Alan Wright and A. Miller, *Federal Practice and Procedure,* § 2815, at 99 (1973)). Therefore, if a "jury's assessment of damages includes an impermissible component that can be identified and calculated with precision," the court can enter a remittitur without encroaching on the parties' rights, and a new trial is not required. *Carter*, 795 F.2d at 134.

## III.  Discussion

The parties agree that the damages awarded to the nondiverse self-funded customers should not have been included in the jury's verdict because the Court did not have jurisdiction over those claims. The issue, then, is whether that "impermissible component" of the verdict can be "identified and calculated with precision" such that it is appropriate for the Court to enter a remittitur, or whether a new trial on damages is required.

The defendants claim that a new trial is required because "there is no basis whatsoever to separate out the damages for any or all of the self-funded plaintiffs." Defs.' Resp. to Pls.' Mot. for Remittitur 15 [ECF No. 1031]. But the record in this case establishes a clear basis for disaggregating the damages of the dismissed self-funded customers – a basis the defendants fervently advocated for earlier in this litigation. Shortly after trial, in June 2005, the defendants filed a motion requesting remittitur of portions of the damages awards for several reasons, one of which was that the claims of five self-funded customers that had opted out of the litigation were erroneously included in the final damages award. *See* Defs.' Mot. for Remittitur Under Rule 59(e) [ECF 890]. In connection with their remittitur request, far from claiming that "no basis" existed to separate out the damages of those self-funded customers, the defendants argued that

> [t]he losses in this case are strictly economic and were calculated by reference to thousands of specific identifiable pharmaceutical reimbursement transactions. The standard set forth in *Carter* is the one appropriate in this case where the precise determination of damages depends on the application of legal rules to determine the correct amount of identifiable economic loss.
>
> Plaintiffs themselves recognized this when they conceded that "remittitur is . . . proper for the five BCBSMA and BCBSMN self-funded plans that responded negatively to Plaintiffs' Rule 17(a) ratification procedure." Obviously, such remittitur is not required because the verdict is "grossly excessive, inordinate, shocking to the conscience or the court, or so high that it would be a denial of justice to permit it to stand." Rather, Plaintiffs agree remittitur is appropriate because Plaintiffs were not authorized to bring these claims on behalf of those five self-funded customers. Thus, the $77,324 in damages incurred by those five customers was wrongfully included in the final damages award. In making that admission, Plaintiffs implicitly accept the standard set forth in *Carter* that damages wrongfully included as a matter of law should be subtracted from the final damages award.

Defs.' Reply in Support of Defs.' Mot. for Remittitur Under Rule 59(e) 4 [ECF No. 905] (internal citations omitted).[3] As stated, the plaintiffs did concede that the damages awarded to those five self-funded customers should be remitted. *See* Pls.' Joint Opp'n to Defs.' Mot. for Remittitur Under Rule 59(e) 17-18 [ECF No. 898]. To that end, the plaintiffs submitted a declaration from their economic antitrust expert, Dr. Saha, who explained how he calculated the damages associated with the claims of those self-funded customers and submitted exhibits supporting his calculations. *See* Pls.' Joint Opposition to Defs.' Mot. for Remittitur Under Rule 59(e) Ex. D [ECF 898-1]. The defendants never raised any objections to the methodology used by or the result of Dr. Saha's remittitur calculations. The Court held that remittitur was appropriate, explaining that "[b]ecause these plans opted out, they were 'impermissible component[s]' of the damage award that 'can be identified and calculated with precision.'" *In re Lorazepam*, 531 F. Supp. 2d 82, 94 (quoting *Carter*, 795 F.2d at 135).

Despite their earlier confidence in this process, the defendants are now objecting to the plaintiffs' calculation of damages awarded to the dismissed self-funded customers and assert instead that the "proper approach is to conduct a new trial on damages as anticipated by the D.C. Circuit." Defs.' Resp. to Pls.' Mot. for Remittitur 7 [ECF No. 1052].[4] The defendants also assert that the

---

[3]     The defendants are hoisted by their own petard. They claim that they "only alternatively argu[ed] for remittitur" of the damages awarded to the five self-funded customers that opted out of the litigation, and while the Court acknowledges that the defendants were also seeking broader post-trial relief in the form of limitation of the duration of damages and dismissal of the claims of *all* of the self-funded customers, the defendants still clearly acknowledged a basis for separating out the damages awarded to specific self-funded customers and supported the Court's entry of the remittitur.

[4]     The defendants overstate the Circuit's commentary on damages, which observed only that the Court *may* have to conduct a partial retrial on damages. *See In re Lorazepam*, 631 F.3d at 542 (emphasis added). The Circuit's opinion was limited to jurisdictional issues surrounding the citizenship of the self-funded customers and did not analyze any issues related to the damages presentation at trial or the expert calculations.

Court will violate their Seventh Amendment rights by entering a remittitur and not granting them a new trial. *Id.*

A.    **Identification and Calculation of Damages Awarded To the Dismissed Self-Funded Customers**

At trial, damages were presented in the aggregate for each named plaintiff and its self-funded customers, but, as demonstrated during the 2005 remittitur process, a methodology exists to separate out the damages for each self-funded customer. The defendants' concerns at this juncture are seemingly solely related to the fact that the current remittitur calculations were not performed by plaintiffs' economic antitrust expert from trial, Dr. Saha. Because Dr. Saha is no longer employed by Analysis Group, the current calculations were performed by Justin McLean, Managing Principal of Analysis Group, who assisted Dr. Saha in preparing his expert reports on damages and performing the 2005 remittitur calculations. Mr. McLean states in a sworn declaration that, in addition to using the exact data from Dr. Saha's Expert Reports and the 2005 Remittitur, the methodology he employed to calculate the current remittitur was identical to the methodology followed by Dr. Saha in calculating the 2005 Remittitur. *See* McLean Decl. ¶¶ 3-4 (Jan. 13, 2013) [ECF No. 1051-4]. The defendants have not raised any specific challenges to McLean's remittitur calculations or his methodology, and the plaintiffs

> have provided to defendants the program developed under Dr. Saha's direction that was used to calculate all of the damages for both the named plaintiffs and the self-funded customers, as well as the claims data upon which Dr. Saha's program relied. The data provided to defendants contains a field which indicated whether an account was a self-funded account or a fully insured "premium" account. Defendants also had a corresponding group number, so if one knows the group number or numbers associated with a given self-insured customer, one can simply use Dr. Saha's original program and the Plaintiffs' original claim data (both of which were produced to defendants more than seven years ago) to determine what portions of the damages were attributed to those group numbers.

- 8 -

Pls.' Joint Reply [ECF No. 1016].

The defendants argue that the plaintiffs' "remittitur approach should be rejected," but they do not identify any flaws in McLean's methodology, and they fail to acknowledge that they previously accepted this identical methodology when it was used by Dr. Saha to calculate the 2005 Remittitur. Instead, the defendants claim that they are entitled to take discovery on McLean's "proposed testimony," to challenge McLean's methodology, and, assuming his testimony "meets *Daubert* standards," to "challenge [McLean] before a jury and have a jury determine the factual issues surrounding Plaintiffs' newly disaggregated damages claims." Defs.' Resp. to Pls.' Mot. for Remittitur 7, 8 [ECF No. 1052].[5] These arguments miss the mark. There is no "proposed testimony," and there are no factual issues to be determined by a jury. Although the defendants are correct that "the weighing of the evidence and drawing of legitimate inferences from disputed facts are jury functions, not those of a judge," there are no facts in dispute or evidence to be weighed at this point in the proceedings. The damages of the dismissed self-funded customers were wrongfully included as a matter of law and simply need to be subtracted from the final damages award.

---

[5]     *Summers v. Missouri Pacific Railroad System*, 132 F.3d 599 (10th Cir. 1997) does not support the defendants' argument that reopening discovery is appropriate under these circumstances. The issue in *Summers* was whether the district court erred in denying the plaintiffs' request for additional time to obtain alternative medical testimony when the court excluded the plaintiffs' proffered medical testimony prior to trial. *Summers*, 132 F.3d at 602. As the Tenth Circuit recognized, the situation in *Summers* was "unique" in several respects, and it bears no relation to the facts or posture of this case.

**B.      Entry of a Remittitur Does Not Impinge On the Defendants' Seventh Amendment Rights**

The defendants' claims that entry of a remittitur will encroach on their Seventh Amendment rights are similarly without merit.  This is not a case in which the Court disagrees with the jury's assessment of damages and is substituting its judgment for that of the jury.  Instead, the damages awarded to the self-funded customers that were dismissed post-judgment as "jurisdictional spoilers" under Rule 21 of the Federal Rules of Civil Procedure should not have been included in the verdict as a matter of law.  As the defendants explained themselves earlier in this litigation,

> [t]he first justification for remittitur, an excessive verdict, is fitting in cases where the determination of damages is subjective, such as cases involving personal injury or emotional distress.  The standard is designed to give the jury a large amount of discretion and to discourage disturbing the jury's verdict.  *Brayman v. 99 West, Inc.*, 116 F. Supp. 2d 225, 230-31 (D. Mass. 2000).  Cases involving an "assessment of intangible noneconomic losses" are "peculiarly within the jury's ken."  *Id.* at 231.  *This is not such a case.*

Defs.' Reply in Supp. of Defs.' Mot. for Remittitur Under Rule 59(e) [ECF No. 905] (emphasis added).

*See, e.g., Consolidated Cos., Inc. v. Lexington Ins. Co.*, 616 F.3d 422, 435-36 (5th Cir. 2010) (holding that district court did not abuse its discretion in granting motion for remittitur where it was clear that the jury had simply failed to deduct an advance previously paid by defendant to plaintiff because "[a]lthough the Seventh Amendment prohibits remittitur without offering the plaintiffs a new trial, there is an exception for situations where 'it is apparent as a matter of law that certain identifiable sums included in the verdict should not have been there.'") (quoting *Foradori v. Harris*, 523 F.3d 477, 503 (5th Cir. 2008).  Here, as with the 2005 Remittitur, the Court can mechanically reduce the damages to the exact amount the jury awarded to the plaintiffs over which the Court had jurisdiction, and the defendants' Seventh Amendment rights will not be implicated.

## IV. Conclusion

For the reasons stated above, the Court finds that entry of a remittitur is proper, and the plaintiffs' motion shall be granted. An appropriate order accompanies this Memorandum Opinion.

August 18, 2017

Thomas F. Hogan
SENIOR UNITED STATES DISTRICT JUDGE